(70 App. Div. 308.)

PEOPLE v. JOHNSON.

(Supreme Court, Appellate Division, Third Department.  March 5, 1902.)

ARSON—EVIDENCE—SUFFICIENCY.
    Evidence in a prosecution for arson in the second degree examined, and *held* insufficient to support a conviction.
    Smith, J., dissenting.

Appeal from Tioga county court.

Mary Johnson was convicted of arson in the second degree, and appeals.  Reversed.

Argued before PARKER, P. J., and KELLOGG, SMITH, CHASE, and FURSMAN, JJ.

Martin S. Lynch, for appellant.
Oscar B. Glezen, Dist. Atty., for the People.

FURSMAN, J.  The indictment charges that on July 4, 1900, at Newark Valley, in the county of Tioga, the defendant willfully and feloniously set fire to and burned in the nighttime a dwelling house then owned and occupied by her, in which at the time there was no human being except herself, and that Radford aided and abetted the commission thereof by procuring certain policies of insurance to be issued upon the dwelling house, and by directly and indirectly counseling, etc., the defendant to commit the same.  Stated in full, the proof made by the prosecution at the trial is this:  The defendant had lived with Radford at a boarding house in Buffalo as his wife.  In December, 1898, one Curry transferred to the defendant, then known as Ellen Grey, some real estate and furniture in Buffalo, and afterwards Curry sold it to Radford.  The defendant purchased the house in Newark Valley in February, 1900, for which she paid in money and property about $4,000.  She bought it through Radford from Meyers. The conveyance to her was expressly subject to two mortgages,— one for $2,000, and the other for $4,000; thus making the entire purchase price about $10,000.  On the 11th day of June, 1900, she procured a policy of insurance on the house for $3,000, payable to the German Bank of Buffalo, the then holder of one of the mortgages, and July 19, 1899, a policy of insurance for "not exceeding $3,000," loss payable to Radford, as second mortgagee.  (This policy was for

one year, and was, on the 5th of May, 1900, assigned by Radford.)
The house burned was the best in Newark Valley, and, although it
cost about $16,000 to build, and was in excellent repair, owing to the
fact that there was no market for such property in Newark Valley
it was, in the opinion of some witnesses, worth no more than $4,000.
After the purchase the defendant received and placed in it three con-
signments of secondhand furniture, including an organ, and a number
of pictures, and also a quantity of drugs in boxes.    Among the fur-
niture was that bought from Curry, and the whole was sufficient to
properly furnish a house of this character.    One witness for the prose-
cution (Pierson) testified that he helped carry about one-half a car
load of furniture into the house, and that it was new.    After the ar-
rival of the furniture, and on the 11th day of June, 1900, the defend-
ant procured a policy of insurance for $1,000, covering household fur-
niture, jewelry, wearing apparel, pictures, and many other things,
and on the 16th day of June another policy, covering the same prop-
erty, for $1,500.    All the property specified in the proofs of loss
was in the house when it burned.    Made a compulsory witness before
a sheriff's jury, she testified that she had never lived under any other
name than Mary Johnson.    She testified that she first discovered the
fire in the kitchen, and the prosecution gave evidence that the fire
was not in the kitchen, but in the elevator, or a room off the kitchen.
She testified that on discovering the fire she ran to the "fire house,"
a few rods distant, screaming; and concerning this the prosecution
gave evidence that the first alarm was given by a man named Halli-
day.    The prosecution also gave evidence that after the fire had been
burning a considerable time something dropped down the elevator
shaft which water did not extinguish, though the chemical engine did.
This constituted the evidence of the prosecution.    It is a settled prin-
ciple of criminal law that, to justify a conviction upon circumstantial
evidence, the circumstances must not only point to guilt, but must
also be absolutely inconsistent with innocence.    The inference of guilt
must be the only one that can reasonably be drawn from the facts.
Poole v. People, 80 N. Y. 645; People v. Harris, 136 N. Y. 423,
33 N. E. 65.    Analyzed, and applied to the inquiry whether there was
sufficient proof to justify this conviction, the evidence is this:    The
defendant's true name is Mary Johnson.    She falsely stated before the
sheriff's jury that she had never been known by any other name.
This was wholly immaterial upon the question of her guilt, and is
easily accounted for upon grounds quite consistent with innocence.
She bought the property in Newark Valley, and paid a fair price
for it.    She had it insured as collateral to two mortgages already
existing upon it, one of which was held by Radford, with whom she
had lived as his wife; but Radford had parted with his policy before
the fire, and had, therefore, no interest in the destruction of the prop-
erty.    She moved into it a quantity of furniture sufficient to furnish
it throughout, and insured this for $2,500; but this furniture was, con-
cededly, all in the house at the time of the fire, and there is no proof
worthy of the name that it was not fully worth the amount for which
it was insured.    She asserted that she discovered the fire in the kitch-
en, when in fact it was in a small room or shaft adjoining the kitchen,

—a mistake easily made in the hurry and excitement of the moment. She stated that she gave an immediate and first alarm, whereas others thought it was given by a man named Halliday. After the fire was well under way, something on fire dropped down the elevator shaft, which was not easily extinguished; but there were two packages of drugs in the house, the nature of which is unknown, which may have caused this. On this proof, was the defendant justly convicted? We think not. There was barely enough to excite suspicion, but by no means enough to establish beyond a reasonable doubt that the fire was of incendiary origin, or to overcome the presumption of innocence with which the law clothes the accused. Every material circumstance proved is as consistent with innocence as with guilt, and, taken as a whole, falls far short of proving that this was an incendiary fire. There was nothing to be gained by it to either Radford or the defendant. It seems to us that she was accused, tried, and convicted upon a mere suspicion that, because she had led to some extent an immoral life, and had sustained at one time improper relations with Radford, she must be guilty of the crime charged. But the law requires that the evidence of guilt in a criminal case shall be clear and decisive, leaving no reasonable doubt in the mind— First, that a crime had been committed; and, second, that the accused committed it. It will not do to convict upon a mere possibility. The proof must be convincing, and unexplainable upon any theory consistent with innocence. We do not think that such was the case here, and therefore conclude that the judgment of conviction must be reversed, and the defendant discharged. All concur, except SMITH, J., dissenting, and PARKER, P. J., not voting.